# UNITED STATES DISTRICT COURT
## for the
### District of Delaware

In the Matter of the Search of  )
*(Briefly describe the property to be searched
or identify the person by name and address)*  )
)  Case No. 21-`182M`
the premises known as ▬▬▬▬▬ New  )
Castle, DE 19720  )
)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of \_\_\_\_Delaware\_\_\_\_, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 876(c). | Mailing threatening communications. |

See attached affidavit.

☑ Continued on the attached sheet.
☐ Delayed notice of \_\_\_\_ days *(give exact ending date if more than 30 days:* \_\_\_\_*)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Charles Neagle
*Applicant's signature*

Charles A Neagle, Special Agent, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
\_\_\_\_telephone\_\_\_\_ *(specify reliable electronic means).*

Date: 06/10/2021

[Judge's signature]
*Judge's signature*

City and state: Wilmington, Delaware

Hon. Sherry R. Fallon, U.S. Magistrate Judge
*Printed name and title*

[FILED stamp: 2021 JUN 10 PM 4:21, CLERK U.S. DISTRICT COURT DISTRICT OF DELAWARE]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN THE MATTER OF THE SEARCH OF the premises known as ▮▮▮▮▮▮▮▮▮▮, New Castle, DE 19720

Case No. 21-

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Charles A Neagle Jr, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. Your Affiant has been assigned to the investigation of Michael PROTACK ("PROTACK"), who is believed to have sent threatening communications through the United States Postal Service in violation of 18 U.S.C. § 876(c) ("SPECIFIED FEDERAL OFFENSE").

2. I submit this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to search the premises known as ▮▮▮▮▮▮▮▮▮▮, New Castle, DE 19720 (the "SUBJECT PREMISES"), more fully described in Attachment A, for the things described in Attachment B. Attachments A and B are incorporated herein by reference.

3. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since October of 2019. I am currently assigned to the Wilmington, Delaware Field Office within the Baltimore Field Division. I have a bachelor's degree in History from Virginia Tech. I am a graduate of the FBI New Agent Training Program in Quantico, Virginia. As part of my duties, responsibilities and training, and in the course of my investigative experience, I have become familiar with the statutes, rules, regulations, policies, and procedures relating to the FBI's investigation of potential violations of federal law. As a Federal Agent, I

am authorized to investigate violations of federal law and to execute warrants issued under the authority of the United States.

4. Prior to my current assignment, I was assigned to the Training Division in Quantico, Virginia where I successfully completed the New Agent Training Program. Prior to my employment with the FBI, I was employed as a Federal Air Marshal as well as two local Virginia police departments. In total, I have 13 years of sworn law enforcement experience. As part of my duties, responsibilities, and training, and in the course of my investigative work I have become familiar with federal laws. Through the course of my career in law enforcement I have been involved in criminal investigations involving homicide, robbery, sex offenses, drugs violations, and abduction.

5. Throughout my law enforcement career, I have investigated individuals and criminal organizations which have represented a significant threat to public safety and national security, and received comprehensive, formalized instruction to include such topics as patterns of crime, complex conspiracies, the exploitation of criminals' telecommunications devices, criminal law, surveillance, and other investigative techniques.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants, and therefore does not set forth all of my knowledge about this matter.

7. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 876 (Mailing Threatening Communications), have been committed, are being committed, and will be committed by PROTACK. There is also

probable cause to believe that the SUBJECT PREMISES contain contraband and evidence, fruits, and instrumentalities of violations of the SPECIFIED FEDERAL OFFENSE.

## FACTS ESTABLISHING PROBABLE CAUSE

**The Threats**

8. The FBI, together with the United States Postal Inspection Service ("USPIS"), is conducting a criminal investigation of PROTACK. The investigation has determined that PROTACK has sent death threats to ▓▓▓▓▓ using the United States Postal Service. ▓▓▓ is an attorney practicing family law in Centreville, Delaware. PROTACK is a former Delaware resident now residing in Seal Beach, California. Your Affiant has reason to believe PROTACK visits Delaware regularly to see his girlfriend, ▓▓▓▓▓ ▓▓▓▓▓ resides at the SUBJECT PREMISES. Your Affiant believes she is the only resident.

9. On January 7, 2021, ▓▓▓ received an envelope in the mail at his law firm in Centreville, Delaware. On the envelope, the letter was addressed to ▓▓▓▓▓ The return address was the "Viper Association" from a P.O. box in Wilmington, Delaware. The envelope contained the following, unsigned letter:

3



The letter states: "The VIPERS are coming for you. We all have military experience and have no fear of the outcome. You are a coward who will regret his actions. Count on being dead by June 2021. You won't know when, where or how but your end has been written. Take the time and put your affairs in order because they will not find your body for weeks" (hereinafter referred to as the "Death Threat").

10. On March 1, 2021, ▇ received another letter addressed to him at the law firm, containing solely a graphic image of a dead, mutilated body:



**Background of the Protacks and ▌▌▌ Role**

11. In 2018, ▌▌▌ began representing ▌▌▌ in divorce proceedings against her husband, PROTACK. ▌▌▌ also represented ▌▌▌ in obtaining Protection from Abuse orders ("PFA") against PROTACK from 2018-2020. In early 2018, PROTACK threatened to kill ▌▌▌ making some of the following statements: "I could shoot you" (while a gun was in reach of the parties); "I could throw you off the balcony" (while ▌▌▌ was sitting next to the balcony door); "I could shoot you in the head and spend the rest of my life in jail happy about it"; and "Someone is going to die today." ▌▌▌ was awarded a two-year PFA.

12. Beginning in or around August 2018 and continuing to the present, ▌▌▌ received numerous post cards and communications that were either unsigned or signed by a random third party, but all believed to be from PROTACK. PROTACK told ▌▌▌ in June

2018 that he was going to deliver "demeaning" post cards to her house to remind/taunt her about an abortion she had years prior.

13. After a trial on July 31, 2020 in the New Castle County Family Court, PROTACK was found in contempt for violation of a PFA based on the ongoing harassment. The Court found that PROTACK was "masquerading as third parties" by way of various anonymous communications, despite PROTACK's denial of writing the communications. In these communications, Protack repeatedly threatened to mail sensitive information to 50,000 people and advised ▇ that she was under surveillance. As a result of these findings, the Court entered a lifetime PFA order against PROTACK, finding that "Respondent continues to be an immediate and ongoing danger to the petitioner."[1]

**Pattern of the Letters and Connection to the SUBJECT PREMISES**

14. Around the time that ▇ began receiving anonymous harassing letters, ▇ and his law partners did as well. The letters almost always coincided with some adverse court ruling or proceeding against PROTACK. A couple weeks prior to receiving the Death Threat, ▇ filed in family court a Motion for Contempt against PROTACK regarding PROTACK's failure to comply with obligations pertaining to the marital residence.

15. On the same day that ▇ received the Death Threat (January 7), ▇ received three anonymous and/or third-party letters sent to her P.O. box. One of those letters purported to come from the Delaware Pro Life Alliance and referenced an abortion she had years ago—an event only PROTACK knew about. The letter stated that PROTACK told this group

---

[1] Motion for Civil Contempt of a Protection from Abuse Order, File No. CN18-02199.

6

about ▮'s abortion and that they will give her name, address, picture and details of the incident to 100,000 people.

16. Both the Death Threat and the aforementioned January 7 letter to ▮ were postmarked out of Wilmington on January 5. Rental car records from Enterprise obtained during the course of the investigation show that PROTACK was in New Castle County, Delaware between January 2-4.

17. With respect to the January 7 Death Threat received by ▮ and the aforementioned letter received by ▮ that same day, USPIS was able to identify the transactional information associated with the USPS stamps appearing on both letters. Both stamps depicted an identifier which enabled Postal Inspectors to determine that both stamps originated from the same book of USPS Forever stamps, which was purchased at the Wilmington, DE Main Post Office on August 4, 2019. Further review of the transaction revealed that a Citizens Bank debit card ending in 7450 was provided as payment toward the purchase of the book of stamps. USPIS then contacted Citizens Bank and determined that the debit card number used during the transaction was associated with a debit card issued to ▮, PROTACK's girlfriend.

18. There is probable cause to believe that contraband, evidence, fruits, and instrumentalities of violations of the SPECIFIED FEDERAL OFFENSE will be found in the SUBJECT PREMISES.

19. The letters as well as the addresses on the envelopes are all in typeface, and thus there is probable cause to believe that some sort of computing device was used to generate the letters and envelopes. Thus, this warrant seeks authorization to search and seize computing devices found in the SUBJECT PREMISES, as described in Attachment B.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

20. As described above and in Attachment B, this application seeks permission to search for contraband, evidence, fruits, and instrumentalities of violations of the SPECIFIED FEDERAL OFFENSE that might be found at the SUBJECT PREMISES, in whatever form they are found. One form in which the evidence might be found is as records in the form of data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure and search of computers and storage media and, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

20. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods. Similarly, things that have been viewed via the Internet are typically stored for some period on the device. This information can sometimes be recovered with forensics tools.

21. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the device was used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

8

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

21. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

22. Based on the foregoing information, I have probable cause to believe that contraband, evidence, fruits, and instrumentalities of violations of the SPECIFIED FEDERAL OFFENSE as set forth herein and in Attachment B are currently contained in the SUBJECT

PREMISES, more fully described in Attachment A. I therefore respectfully request that a search warrant be issued authorizing a search of the SUBJECT PREMISES for the items described above and in Attachment B, and authorizing the seizure and examination of any such items found therein.

Respectfully submitted,

*/s/ Charles Neagle*

Charles A. Neagle, Jr.
Special Agent
Federal Bureau of Investigation

Sworn to me over the telephone and signed by me pursuant to
Fed. R. Crim. P. 4.1 on this \_\_10th\_\_ day of June, 2021.

_____
THE HONORABLE SHERRY R. FALLON
United States Magistrate Judge

# ATTACHMENT A

## Property to Be Searched

The property to be searched is:

███████████████, New Castle, DE 19720 (the "SUBJECT PREMISES"). The SUBJECT PREMISES is a twin residence connected to the residence next door (██████████). It has a brick front with green shutters on the windows and green paneling around the front door. Below is a photo of the SUBJECT PREMISES (residence on the right):



## ATTACHMENT B

### Particular Things to be Seized

All materials constituting contraband, evidence, fruits, or instrumentalities of violations of Title 18, United States Code, Section 876(c) ("SPECIFIED FEDERAL OFFENSE"), including but not limited to:

1. Envelopes and/or printer/copy paper;
2. USPS transactions records, including but not limited to receipts, correspondence, paperwork, etc.;
3. USPS "Forever" stamps;
4. Enterprise rental car records, including but not limited to receipts, correspondence, paperwork, etc.;
5. Banking account information, including but not limited to physical debit and credit cards, statements, debit and credit card receipts, etc.;
6. Printers, including but not limited to, standalones, multi-task devices (i.e. print, copy, fax, etc.), etc.;
7. Any correspondence, including but not limited to envelopes, letters, papers, books, writing/steno/notepads, and/or other implements, referencing and/or depicting the following names, individuals, addresses, groups, words and/or phrases:
    a. ▅▅▅▅▅▅▅▅▅▅▅▅▅▅," "Weenie Boy," "Little Man"
    b. "5721 Kennet ("Kennett") Pike, Centerville, De 19807"
    c. "PO Box 178, Wilmington, De 19801"
    d. "Viper Association," "Vipers," "Venom"
    e. "Notice of Affidavit"

f. ▮▮▮▮▮▮▮▮

   g. "Case Information"

   h. "P O Box 112, Seal Beach, Ca 90740"

   i. "P O Box 478, Hockessin De 19707"

   j. "Addalli Alliance," "Addalli"

   k. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

   l. ▮▮▮▮▮▮▮▮▮▮▮▮

8. Any correspondence between ▮▮▮▮▮▮▮▮ and Michael Protack;

9. Computers and storage media (as defined below) identified as belonging to ▮▮▮▮ ▮▮▮▮ or Michael Protack, including:

   a. Those found on their person;

   b. Those found within their bedroom or sleeping quarters;

   c. Those found within close proximity to their person.

10. For the computers and storage media (hereinafter the "DEVICES"):

   a. evidence of who used, owned, or controlled the DEVICES at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

   b. evidence of software that would allow others to control the DEVICES, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

   c. evidence of the lack of such malicious software;

   d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and

2

events relating to the crime(s) under investigation and to the computer user;

e. evidence indicating the computer user's knowledge and/or intent as it relates to the crime(s) under investigation;

f. evidence of the attachment to the DEVICES of other storage devices or similar containers for electronic evidence;

g. evidence of programs (and associated data) that are designed to eliminate data from the DEVICES;

h. evidence of the times the DEVICES were used;

i. passwords, encryption keys, and other access devices that may be necessary to access the DEVICES that are found stored within the DEVICES

j. documentation and manuals that may be necessary to access the DEVICES or to conduct a forensic examination of the DEVICES;

k. records of or information about Internet Protocol addresses used by the DEVICES;

l. records of or information about the DEVICES' Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m. contextual information necessary to understand the evidence described in this attachment; and

n. any and all adapters, chargers, or other hardware items necessary to charge the battery, or to maintain the functioning of, the DEVICES.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of computer and storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.